# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.            **Case No. 06-CR-336**

**BRIJIDO AGUILERA**
   **Defendant.**

## DECISION AND ORDER

**I.**

As part of its investigation of an alleged cocaine distribution ring, government agents installed a video camera on a utility pole outside of defendant Brijido Aguilera's property, which they used to monitor the traffic into and out of his driveway. They obtained no warrant authorizing the video surveillance. Defendant moved to suppress the evidence obtained via the camera, asserting a violation of his Fourth Amendment rights. The magistrate judge handling pre-trial proceedings in the case recommended that the motion be denied. Defendant objects, so I must review the matter de novo. Fed. R. Crim. P. 59(b)(3).[1]

**II.**

The Fourth Amendment protects individuals from unreasonable "searches" and "seizures." See United States v. Garcia, 474 F.3d 994, 996 (7th Cir.), cert. denied, 128 S .Ct. 291 (2007). "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A seizure of property occurs where there is some meaningful

---

[1]Defendant does not request an evidentiary hearing, and the parties agree on the basic facts as set forth above.

interference with an individual's possessory interests in that property." Soldal v. Cook County, 506 U.S. 56, 63 (1992). In the present case, agents installed the video camera on a utility pole outside defendant's property and did not effect a trespass during the installation. Thus, there was no physical intrusion or interference with defendant's possessory interest in his property. See Garcia, 474 F.3d at 996. The issue is whether the use of the camera to monitor defendant's driveway constituted a search.[2]

A defendant objecting to a search bears the burden of demonstrating a legitimate expectation of privacy in the area searched. United States v. Villegas, 495 F.3d 761, 767 (7th Cir. 2007), cert. denied, 76 U.S.L.W. 3289 (U.S. Jan. 7, 2008). A legitimate "expectation of privacy is present when (1) the defendant exhibits an actual or subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." United States v. Amaral-Estrada, 509 F.3d 820, 827 (7th Cir. 2007). Courts typically extend the greatest protection to the home, which includes both the residence structure and the home's curtilage, i.e. the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home. Bleavins v. Bartels, 422 F.3d 445, 450-41 (7th Cir. 2005).

However, a person does not have a reasonable expectation of privacy in what he knowingly exposes to the public, even in his own home or office. California v. Greenwood, 486 U.S. 35, 41 (1988). For example, courts have held that there is no legitimate expectation of

---

[2]Defendant complains that the government did not obtain permission from the utility company before installing the camera. However, defendant lacks standing to assert any rights on behalf of the utility company. See, e.g., United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006) (stating that a defendant cannot assert the Fourth Amendment rights of others). Defendant does not own the utility pole upon which the camera was installed, and the pole is not located on defendant's property.

2

privacy in driveways and porches visible from a public street.  United States v. Evans, 27 F.3d 1219, 1228-29 (7th Cir. 1994) (collecting cases); see also California v. Ciraolo, 476 U.S. 207, 213 (1986) ("That the area is within the curtilage does not itself bar all police observation.  The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.  Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.").  Further, courts have held that police may use technology to enhance or substitute for surveillance they could lawfully conduct themselves.  See, e.g., United States v. Knotts, 460 U.S. 276, 282 (1983) ("Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case."); Garcia, 474 F.3d at 998 ("Of course the amendment cannot sensibly be read to mean that police shall be no more efficient in the twenty-first century than they were in the eighteenth.").

These cases lead to the result here.  The police could have stood on the street outside defendant's house and observed the comings and goings from his driveway; substitution of a camera for in-person surveillance does not offend the Fourth Amendment; and the camera did not record activities within defendant's home or its curtilage obscured from public view.[3]  See,

---

[3]This is not a case, like United States v. Cuevas-Sanchez, 821 F.2d 248 (5th Cir. 1987), where agents used a camera to observe activity that would otherwise be obscured by a fence. Nor is it like United States v. Torres, 751 F.2d 875 (7th Cir. 1984), where agents recorded activity inside a private building, or United States v. Nerber, 222 F.3d 597 (9th Cir. 2000), where agents installed a camera inside a hotel room.  Because the camera at issue in the present case recorded an area over which defendant had no legitimate expectation of privacy, his reliance on these cases, which held that the warrant requirement applied, is misplaced. See State v. Holden, 964 P.2d 318, 321-22 (Utah Ct. App. 1998) (distinguishing Cuevas-

3

e.g., United States v. Jackson, 213 F.3d 1269, 1281 (10th Cir.), vacated and remanded on other grounds, 531 U.S. 1033 (2000) (holding that the defendant's Fourth Amendment rights were not implicated by installation of video cameras on telephone poles, which were incapable of viewing inside houses and were capable of observing only what any passerby would easily have been able to observe); see also Allender v. Huesman, No. IP01-1718, 2003 WL 23142184, at *6 (S.D. Ind. Apr. 14, 2003) (holding that video surveillance of a driveway did not amount to a search). Therefore, for these reasons and those stated by the magistrate judge, the motion must be denied.

**III.**

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is **ADOPTED**, and defendant's motion to suppress (R. 278) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

Sanchez where the camera recorded activities open to public view).